Ron, this case on the Dock sued at 17.0399. James Carney, Lincolnshire County, Lincolnshire Rural Rights File Protection Agency, Defendant Appellant. Arguing on behalf of the Defendant Appellant, Ms. Erika J. Thomas. Arguing on behalf of the Defendant Appellant, Mr. Thomas Ellington. Ms. Thomas, there's a motion for substitution based upon the death of James Carney. And to substitute the widow of James Carney as the plaintiff in this case. Do you have any objection? We have no objection. So ordered. The motion will be granted. You may proceed with the oral argument. Thank you. Good morning. There are many issues of contention in this case. But one thing the parties can surely agree on is that James Carney was a dedicated firefighter that served Lincolnshire Riverwoods Fire Protection District for many years. As Justice McLaren indicated, subsequent to the briefs being filed in this case, James Carney did pass away. He lost his battle with mesothelioma on December 17th of 2017. But as difficult as the facts of this case are, this case is not about the fact that Firefighter Carney has passed away. This case is about whether Firefighter Carney's mesothelioma occurred during his response to what he reasonably believed to be an emergency. Although the case is extraordinarily difficult and sympathetic, the district asserts that the law on the case clearly dictates that Firefighter Carney and his survivors were not entitled to benefits under the Public Safety Employees Benefits Act. Counsel, why isn't the list of emergency calls that was an exhibit in this case, together with his affidavit, enough for us to conclude that the requirements of 10B were satisfied? Well, first of all, that list does not identify when he incurred this mesothelioma. It is an unidentifiable disease as far as when it occurred, when it initially manifested, what calls made the disease progress, what calls eventually made it symptomatic. It is impossible, medically impossible, to determine when that – which of those calls made that disease disabling. And why did you file a motion for summary judgment? Why did we? Isn't that – it sounds to me like the paradigm of a material issue of fact. We – You're talking about causation, right? And when did – when was this disease caused? Was it caused at a time of an emergency or was it a non-emergency cause, right? I mean – Well, exactly. You have to build the syllogism, the premises, in order to come to a proper conclusion. And almost the first premise is, when was this caused? Well, the point is there is no evidence of causation. I guess we were pursuing the summary judgment issue based upon the negativity and the negative evidence. Why would there need to be evidence of an emergency before the pension board? There wouldn't need to be any in front of the pension board, but that doesn't alleviate that – Mr. Carney's responsibility to prove it to the village. There still has to be proof that he was responding to an emergency at the time that he incurred this illness. Does there only have to be one incident or one time? I mean, there can be many contributing – Absolutely. – incidents or causes, correct? Sure. And there is case law. Barr and Richter, I'm – you know, I'm sure the court is familiar with those cases. Those cases talk about firefighters and emergency service personnel who were injured on multiple occasions. However, the key difference between those cases and the cases here is that there was at least one identifiable time that those injuries were either aggravated or occurred that were able to pinpoint during an emergency response. And we don't have that here. We don't have any evidence of any aggravation or exposure even. There's not even a – We have a list. You can pick – We have a list. Let's say there was a fire, the year 2000. I'm looking at an exhibit that was part of the record. Dumpster fire extinguished, 500 gallons of water, extinguishment by fire service personnel. That's on his list. I mean, why wouldn't that be a contributing cause? Do we know what activities Mr. Carney did based upon that – on that list? He could have stood by the engine. He could have been the engineer that day. So it's your – Do we know that – So that the role – you're saying the role of a firefighter in responding to a scene determines whether or not they're responding to an emergency? I'm saying that under the Gaffney definition, the Supreme Court has indicated that there needs to be proof of some type of emergency, which they've defined as an unforeseen circumstances that arises in the response. But that's – That list does not – I'm sorry. That list does not indicate any unforeseen circumstance that Mr. Carney came – Would you agree? I'm sorry. Yeah, just a second. But Gaffney involved two training exercises. These weren't training exercises as I reviewed this list. So how does Gaffney really even apply if the issue there was during training exercises? I mean, were those emergencies and then the two different results? Why should we be looking at Gaffney? Well, I don't know that the facts of those exercises apply, but I do believe that the definition that the Illinois Supreme Court came down with of emergency is applicable to this case. And, you know, let's take, for example, the dumpster fire you referred to. Is there any proof or indication that there was asbestos in that dumpster, that that in any way exposed Mr. Carney to – I mean, mesothelioma is caused by asbestos. Is there any indication of asbestos there? That list doesn't say yes or no. There is no medical evidence in this record that says that that dumpster fire in some way aggravated or caused this. And you can go down that entire list and you'll have the same responses. There's no medical evidence from any of these doctors that say that any of these calls aggravated or progressed this disease or whether there was asbestos involved. Well, the doctors did say that acts of duty caused it, which is why they gave him a blind duty pension. Well, sure. Dr. Sammo indicated it was an occupational disease, and he is an occupational doctor. I mean, many of the doctors indicated that, you know, there is not a lot of evidence of occupational exposures. I cannot recall specifically which doctor said that. Dr. Moisen indicated he spoke of a lack of significant occupational exposure. But, you know, we're not saying that they didn't say it was caused or contributed during his career as a firefighter. What we're saying is which one, which call? How could a person with a disease ever get a Section 10 pension under a placebo? Under your argument and your definition, if you can't pinpoint, I fell on this day tripping over a hose, if it's a combined, you know, you respond to a number of fires and you get these diseases that the statute recognizes are common to firefighters. Sure. You could never get health benefits. I think that's the catch-22 here. Bramer, the Supreme Court said in Bramer, you're not to get these type of benefits with occupational disease illnesses or illnesses that fall under that category. That is not what the Illinois General Assembly had in mind when it came up with placebo. What they had in mind was selfless firefighters, selfless emergency first responders who ran into the burning building or ran after the crook and were injured in some way responding to that emergency, responding to try and save, you know, person or property. They are not, they were not intending that this be a catch-all for any and every type of occupational disease. That these firefighters might come in contact with. Is your argument now that we should reverse the trial court and then enter summary judgment in your favor? Or that we should send it back for a further trial on the issue of emergency? And what did he do during these times? Well, our suggestion is that summary judgment should be entered in favor of the district. I don't think there's any way to prove, and as I indicated earlier, I mean, really what we have is a void of evidence. There is no possible way that Mr. Carney or his estate could prove, first of all, what caused his mesothelioma, and second of all, when it was caused, what caused. And without the ability to prove that, as a matter of law, the district is entitled to summary judgment in its favor. As a matter of law, they can't satisfy the second prong of the placebo analysis. Why can't they? Because there is no evidence of when that exposure occurred or how that exposure occurred, and therefore they can't establish. Well, you just created a syllogism that has another premise on it that I didn't consider, which was the episode and whether or not that was the date or was there something else that caused it. So you're talking about an episode, and I'm paying more attention to causation. You mentioned several times during your responses to my colleagues that there is no evidence from any doctor as to causation or an opinion as to an emergency, and it would seem to me that maybe mesothelioma is a disease that a layman doesn't know too much about, and therefore if we are to make a considered decision or the trial court is supposed to do it, it would have to do it based upon expert testimony. And the first experts that come to my mind, at least when it comes to mesothelioma, are doctors who deal in that area of practice or possibly the three doctors that testified at the pension board. Why is it that both of you file motions for summary judgment when there is no expert testimony as to whether or not this is an emergency and how it was caused? The fact that there are events may or may not establish a premise that there were, in fact, occurrences upon which an expert opinion could be based upon. So the question I have to you is the one I asked you before, which was why did you seek summary judgment? If you knew that the issue required or would be best answered or supported by expert opinions, most likely from doctors. As I indicated before, the district's position, I can't speak to why Mr. Duda proceeded in the manner he did, but the district's position is there is no evidence presented. There was no evidence presented to the district that would indicate when or how or on what call this disease was aggravated or progressed. And without that evidence, as a matter of law, Mr. Carty cannot satisfy the second prong of the placebo analysis. And for that reason, that's why we filed the summary judgment motion. You would agree that the doctors were not asked about this emergency situation. That's correct. So if we really haven't delved fully into this emergency situation yet with the doctors, or really no deposition, were depositions taken in this case? Not of the doctors, of course. No, not of the doctors. The only deposition that's present in the record is a deposition of Mr. Carney that was given in the asbestos litigation that he filed after. Not in this case? No, not in this case. So what was done in this case? The transcript and the judgment of the pension board was submitted into evidence, and then that was supposed to be sufficient to grant all that Dorothy wanted? She was going to go home with Toto? No. I mean, there was significant written evidence that was presented to the pension board. There was a lot of exhibits. Some of the exhibits that are present in the record here, the summary exhibits of the calls and whatnot, those were admitted to the pension fund. So essentially the record from the pension fund was submitted here. But again, our position is there was no evidence submitted, and therefore if there's no evidence of that second prong, we are entitled to summary judgment. The reason for the motion for summary judgment was based upon there was no presentation of evidence in the pension board proceedings, correct? There was no evidence, no, no. That is not correct. Then it was not only what transpired before the pension board, but it was also the exhibits that were filed, and the lack of expert testimony establishing causation based upon emergency or emergencies? Yes. I believe the trial court essentially creates a new record in this case. Certainly the pension fund record and exhibits are part of that trial court record, but the parties were free to present any other additional evidence that they wanted to. The parties were free to conduct discovery. Had the pension board made a specific finding, regardless of whether it had authority to do so, that the causative acts of this catastrophic injury were based upon emergencies, and since you didn't intervene, and you didn't appeal because you didn't intervene, and the judgment became final, and the judgment that would have been submitted in my hypothetical case had a finding or a holding or a determination that the cause of his injuries were based upon emergencies, would we even be here today? If that ruling had come down, I cannot imagine that the district would not have taken that up on administrative review, particularly the part about it was an emergency. How could you take it up on administrative review if you weren't a party to the proceedings? There is case law that provides for other outside agencies. I believe the, is it the Stickney case? I believe in that case the village was able to file an administrative review after the case. I'm going to take the hypothetical and turn it into a counterfactual condition by adding this fact that it didn't happen. All right. So take that out of the situation. If the pension fund under your hypothetical had gone beyond its jurisdictional capacity, in my opinion, and made some type of determination that a specific emergency had caused this mesothelioma, then I guess we would have been having a different discussion here today. But first of all, it is beyond their jurisdiction. Their determination is whether or not that pensioner is entitled to occupational disease disability pension benefits or line of duty disability pension benefits, not whether it was an emergency situation. So there's that issue. But that is beyond their ability. It was beyond their jurisdiction. And so I would submit that they did not even have the authority to bind the district in that type of situation anyway. Okay. You'll have an opportunity to make that comment. Mr. Duda. Good morning, Your Honors. My name is Thomas Duda. May it please the court. Counsel, I represent the deceased James Carney. I was going to start my argument with whether or not these were emergencies. For the record, and his widow. I'm sorry? And his widow. And his widow. Yes, I have a retainer from the widow as well. She had a problem, otherwise she'd be here this morning. A medical problem. But in any event, I think I do need to start with the Healan case, given some of the questions posed by the court in terms of causation, burden of proof, and medical testimony. The pension board, in fact, made a determination of exposure, not exposure, made a determination that the particular episodes listed in Summary Judgment Exhibit No. 7 were the cause of the condition that disabled Lieutenant Carney from continuing his employment. And I actually, just so I didn't want to lead through the record, but if the court looks at pages C-591, which is Dr. Gill, there's a certification in the file. Is it medically possible that the applicant's disability is a result of sickness, accident, injury occurred in, or resulting from the performance of an active duty, or from the cumulative effects of active duty? And the doctor unequivocally says yes. Or within a reasonable degree of medical certainty. The question posed to the doctor was medically possible. It was taken right out of the statute. So I think the attorney who drafted these certificates for the board took the language right out of 4-110 and asked the doctors to comment. Dr. Moisen answered unequivocally yes in C-595. Dr. Samuel answered unequivocally yes in C-605. The question here, though, is the interplay between acts of duty and emergency situations. And you would agree that those are two different things in two different sections of the statute. I mean, in 10-A we talk about line of duty, which would be acts of duty. Under Helan and Bremer, that translates into a catastrophic injury. But under 10-B, emergency situations, there are certain acts of duty that are not emergency situations, correct? That's true. I just wanted to put 10-A to sleep before I moved on to 10-B.  Because the questions that were raised about whether we need to remand this and take depositions with medical experts under the Helan case would not be the appropriate response. I don't think those questions were directed toward 10-A. They were directed toward 10-B in whether these doctors would have any information about emergency situations. Okay. Getting into 10-B. In my opinion, if you read the decision of the Pension Board closely, I do think that the Pension Board indicated that the particular calls that were submitted to the doctors were emergencies. But I'm going to assume that that isn't part of the Pension Board's decision. The documents that were submitted to the doctors, which were the list that Judge Kavanaugh gave, which Judge Zinoff was asking counsel about, were introduced into evidence before the Pension Board, and this is at Record C-264, by counsel for the Pension Board, enclosed, please find a disc containing the fire calls and hazmat calls that I used to prepare the chart that is included as Board Exhibit 8 of the hearing exhibits. These records were subpoenaed from Lincolnshire Riverwoods Fire Protection District. Initially, I thought it was clear in the record that the subpoenaed records were only for emergencies. The subpoena, as far as I could tell, did not include a request for medical calls, for patient assist calls. These were strictly fire calls and hazmat calls, and I perceived that Page C-264 was a sufficient certification to establish that the records submitted to the doctors were themselves emergencies. When I got the district's motion for summary judgment and their response to mine, where the district raised the question, were these exhibits that begin on Page C-264, these weren't all emergencies, is when I submitted these to my client, and I had him go through them one at a time to exhaust his own personal recollection, and that's why we filed his affidavit, certifying those incidents that he contended might not have been emergencies, but the episodes that he affirmatively under oath stated were emergencies. And with that affidavit and this exhibit, the doctors who gave the opinions that I read, these were the exhibits they were relying on. That's the information that these doctors were given. They got the medical records, they examined James Kearney, and their opinion on causation was purely based on these run reports. These were emergency run reports certified under affidavit by the plaintiffs that these were emergency reports. If we're to look at what the definition of an emergency is, do you agree with opposing counsel that we're to look at the Gaffney case? And if so, then what were the unforeseen circumstances that were part of this record that your client documented? He and his crew extinguished fires for periods of time as short as 15 minutes, as long as two and a half hours. Well, wouldn't that come within, for instance, the imminent danger prong of it, requiring an urgent response? But Gaffney seems to require and talk about another prong or element being an unforeseen circumstance that arises during this urgent report. So my question is, is this case applicable? Do we follow the definition there of what an emergency is when we're looking at this? Well, the point in Gaffney that the court was making is firefighter Gaffney was injured during a training exercise. And what the court said during the course of this training, and ordinarily that would not have been an emergency because at any point he could stop it and it would end. The court said that because as the training evolved, he was confronted with an unforeseen circumstance.  But answering a fire alarm and putting out a fire is clearly an emergency, and what can happen at a fire scene is unforeseen. I mean, there are cases, I'm thinking of the Moran case where the firefighter didn't even go into the building and he ordered someone into the building and there was a flashover and the man was killed. At any fire ground, that is an emergency. That's the essence of what that statute's all about. And the reason the statute, I was kind of struck by the wording in the district's brief that this is a reward for firefighters who risk their lives. I've never viewed this as a reward. I've viewed this as a benefit plan to provide health insurance to firefighters and their families who, because of their disability, which arise out of the acts of duty that they perform, lose their jobs, they lose their health insurance, and they now suffer from pre-existing conditions that will make substitute health insurance difficult to get. It's not a reward. It's a safety net. And based on what the pension board decided under the Healan case, there's nothing to be tried. The pension board has already considered the calls that the plaintiff went on and found that those created catastrophic injury. And in my opinion, when one is at a fire scene extinguishing a fire, even if one is at nickels aluminum and there is carbon dioxide at dangerous levels that have to be cleared, that's an emergency. So the calls listed, your argument is the calls listed in summary judgment exhibit number seven are by definition emergencies because they're responding to fires and hazmat situations that they don't know what they're going to get to, see when they get to that, basically. Correct. It's not a patient assistant like Wiltshire. So there's no need for further evidence on that issue? In my opinion, absolutely not. The briefs by the district kind of distinguish between injury and disease. And an injury is something that just happens on a particular day at a particular time at a particular scene, whereas a disease happens over time. And basically drawing a distinction, for instance, in the Crow case, when the court looked at the legislative history of the state senator who was talking about it, the state senator talked about injury, someone who was injured and not necessarily someone who accumulated over time a disease. I mean, is there a difference between the two? Well, Bremer makes the difference clear. An occupational disease under 4-110.1 under Bremer would not trigger the Public Safety Employee Benefits Act. An injury under 4-110 would trigger a benefit. And it specifically said, if the firefighter proves an entitlement under 4-110, they're entitled to receive placebo. If the catastrophic injury occurred responding to what they reasonably believe to be an emergency. It doesn't have to be. The one that Gaffney says that Wiltshire discounts, Gaffney, which is a Supreme Court case, says that you don't have to prove it's an actual emergency. You simply have to prove that the firefighter reasonably perceived that it was an emergency, even if in fact it wasn't an emergency. But that's neither here nor there. The point is, under 4-110, the statute provides for payment for a specific injury, but 4-110 also covers a situation where it's due to, quote, the cumulative effects of acts, plural, of duty. And counsel talks about several of the cases. Number one, I would direct the court's attention to paragraphs 21 and 22 in the Novak case. I've read Novak probably 20 times, and I've never really noticed paragraphs 21 and 22. The Novak court actually talks about the cumulative effects of acts of duty in terms of making it difficult to predict the specific date of disability. But it clearly, the Novak court clearly contemplates that 4-110 includes multiple acts of duty. And if you look at the cases, particularly Richter, I think he's a lieutenant, or Frank Richter, had three injuries that ultimately resulted in his getting placebo benefits. Two of them were shoulder injuries. They were specific injuries at a given date, time, and place. But one of the bases of conferring benefits on him was a chronic rhinitis that was aggravated by exposures at work and the cumulative effects of diesel fumes in the fire station. And he tried his case successfully on rhinitis before the Workers' Compensation Commission, which was ultimately settled. So the need to prove that on April 3, 2018, Tom Duda was exposed to 10 parts per million of asbestos in the courtroom in Elgin, Illinois, and a doctor saying that exposure contributed to his cancer, I don't think that's part of the burden of proof. I think if a doctor has a series of events to which the firefighter, I'm given dates, times, and places. I mean, exhibit number 6 and 7 give dates, times, and places. And if the doctor ultimately concludes that those dates, time, and places led to this condition, he's entitled to benefits under Healan, Bremer, and Richter, in my opinion. Does it matter to our analysis here in talking about whether Mr. Carney responded to emergencies and met the requirements of 10B that the board's findings and decision included alternate findings that he was entitled to both a line of duty as well as an occupational disease and disability pension? Does that figure in? I don't think it does. Because, oddly enough, originally this was filed as an occupational disease application. And the reason it didn't wind up in an occupational disease application were these exhibits and the way these exhibits were interpreted by the three doctors that the pension fund retained. Once the pension fund and myself became aware of these three reports, I moved to amend it on the basis of the fact that it was an occupational disease application. On the basis that I wanted the evidence to conform, the proofs, the theory to conform to the proof. And before that, I didn't realize that there was such evidence of discrete exposures and that the three doctors believed that these discrete exposures led to the condition. Are you saying that there was no alternate pleading relative to a disease accumulated over years? No, I'm not saying that. I clearly wanted an income stream, so I did. But you pled in the alternative. I did. And there was a finding in the alternative. There was. So which one are we supposed to grant? Or at least determine was appropriate? I believe the one that the pension fund said was the basis of their decision. In my opinion, the pension board decision is clear that the main basis of their decision is 4-110. That's the way I read it. Here's a syllogism. You tell me what's wrong with it. An injury and a disease are not the same thing. The pension board finds in the alternative, essentially finding that both occurred. Unless there is some other injury that I'm not aware of and there is only the disease mesothelioma, isn't the pension board's decision internally inconsistent, tactically and paradoxically? I don't think so because the terms injury and disease, in my opinion, are terms of art and matters of statutory interpretation. In my opinion, the Bremer court's distinction between conferring benefits under 4-110 and denying them under 4-110.1 is that 4-110.1 has a completely different burden of proof for diseases, meaning not a disease in the dictionary sense, but disease in the sense of statutory interpretation. With respect to cancer, 4-110.1 has a rebuttable presumption, which would have produced a lighter burden of proof for the applicant than the burden of proof under placebo. And that's why Bremer, in my opinion, it was the existence of a different burden of proof under 4-110.1 rather than the word disease that was the foundation of its decision. In my opinion. Thank you, sir. Thank you, Your Honor. Ms. Thomas. You may proceed. Thank you very much. I just have a couple of comments. First of all, Mr. Duda indicates that counsel for the pension fund sent in a letter saying that these are the fire and hazmat calls, and he took that to mean that these were the only emergency calls. Well, I'm not certain how that great leap in logic could have happened because if you look at the list, many of the items that are on the list are clearly not emergency calls. Separate from the ones in his affidavit, the outlines? I'm talking about the list of the fire incidents and the hazmat incidents that the pension fund provided that's in the record here. No, I'm not talking about anything outside of those. But if you look at that list, they're not all emergencies. Some were false alarms. Some were responses to this card access to nickels aluminum to reset that. I mean, if you look at the definition or the descriptions of these calls, there's a great many of them that were not, quote, emergencies. Now, certainly they might have been dispatched as emergencies. But as this court is aware, in Vaughn and Wilczek, just because an emergency call is coming out doesn't mean it's an emergency under placebo. I mean, in the Vaughn case, the Supreme Court, that was the gentleman who struck his head on the doorframe as he was reaching in to get his radio or to respond to an emergency on his radio. Well, he was responding to a call. The case made it clear that nobody knew whether it was an emergency call. He was responding to a call. Here you actually have information on this exhibit that says fire, you know, fire here, fire there, garage fire, whatever it may be. So you actually know what the call is that they're responding to. Yeah, exactly. But the fact that it was categorized as an emergency is not fully determinative here. If he was injured on the way to the fire call, then I think you could say it was an emergency until such time as it's determined to be otherwise. I won't grant you that. And your arguing is, is just because it's listed there, it doesn't necessarily mean that it's an emergency. Exactly. It's also dependent on the context of the factual structure. That is true. And there might have been a situation where a firefighter on the scene was in an unforeseen circumstance, but we don't know if that was Mr. Carney. Mr. Carney might have been the guy who drove the truck there and stood by the truck. We don't know. I mean, that's the problem with this entire case. He was a lieutenant, wasn't he? We just don't know. I believe he was a lieutenant at the time of his retirement. The commander in chief of the operations, or is there someone above him at an emergency call? He's kind of middle of the pack. There are firefighters that are below him, and there are chiefs, deputy chiefs, battalion chiefs that are above him. So there are certain, I mean, certainly he would have been directing behavior of the firefighters below him. So are you saying that every one of these that you'd have to go, like let's say the third one listed in 2001, a multifamily dwelling fire. Does the plaintiff have to come in then and say that there were unforeseen circumstances at this? I mean, I read that to mean, if I'm responding to that and then I'm putting out the fire, you never know what's going to happen. This isn't a training exercise. It's in the prism of a training exercise where it's controlled. And Lemina's was controlled. You know, Gaffney evolved into unforeseen circumstances, and that's maybe where this unforeseen circumstance came. But Kelce's argument is, when you're responding to a fire, and then you're putting that fire out, you never know what's going to happen in an uncontrolled situation. Well, certainly. Although Gaffney has been used by Illinois courts in emergency type circumstances, it has not just been limited to training exercises. What I'm getting at is the unforeseen circumstances. I mean, does the person have to show that I got there and oh my gosh, there were unforeseen circumstances, or is it not enough that you're doing something that could result in unforeseen circumstances? I believe you have to show a direct link between the unforeseen circumstances and the injury that caused your claim for placebo. I don't believe just because you were called to an emergency on paper under the NIFR system that that means that it is an automatic emergency under 10B. I'm not sure, I don't want to put words in your mouth, but I seem to be getting from you the idea that, like the residential fire, the plaintiff has to establish that there was something at that fire, like asbestos on the vents or the pipes or whatever, that could have caused the disease. If the fire was a fire and there was no evidence of toxic materials that could be inhaled and cause any lung problem, then he hasn't proved causation. Well, certainly that. He also has to prove what he was doing with regards to that fire. Was he command that day? Was he away from it? Was he in the heart of the fire? Was he breathing it? Did he have his SCBA apparatus on at that time? Is that what our legislature, you think, intended by making these health benefits available to firefighters? Depending on what their position is, if they rose through the ranks and they just commanded all these men at the fire and something happened, they wouldn't be eligible? No, certainly I believe a chief or a deputy chief is absolutely eligible, but you still have to meet that burden of proof. You still have to show that you were the one who was in there responding to that emergency and you came across some unforeseen circumstance that caused you an injury. That you were responding to that emergency. No, of course not. I believe that the legislature intended from the lowest firefighter to the highest chief to be covered by this. But that doesn't alleviate your need to establish that you are entitled to this benefit. When firemen go to a fire that might have toxic materials like asbestos, do they check their clothing? Because there's case law that talks about family members who get mesothelioma from the particles that are brought home in the clothing of the worker. Family members. Which suggests that particles on your garb have an adverse effect on a lot of people, not only yourself. So the question I'm proffering or suggesting is when does standard operating procedure or protocols indicate or are there records kept to indicate that after a fire the fireman's suits are examined for toxic materials? That if they stay on the uniform it may not only cause harm to the particular firefighter but anybody in the house, the firehouse. I'm not aware of any policies like that. In fact, what I am aware of is that firefighters, it's almost a badge of honor if your turnouts are particularly sooty and dirty. They almost intentionally don't clean them because it shows the action they had out in the field. Any other questions? I think your time is up. We don't have any other questions. Thank you very much. Thank you. Court's adjourned.